IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE MAIN STREET AMERICA GROUP,
*et al.*,
Plaintiffs,

Civil No. JFM 08-3292

v.

SEARS, ROEBUCK, AND CO, *et al.*,
Defendants.

MEMORANDUM

This case arises from a fire that began in Mary Castle-Horne's garage on November 12, 2007. The fire damaged Mrs. Castle-Horne's car, her home, and her husband's truck. Plaintiffs[1] allege that the fire began in a Sears/Kenmore freezer—manufactured by Electrolux Home Products, Inc. ("Electrolux") and sold in 1998 by Sears, Roebuck, and Company ("Sears") (collectively "Defendants")—that was located in the garage. Count I of Plaintiffs' Complaint alleges that the freezer was negligently manufactured and contained defects; Count II alleges negligent failure to warn and negligent failure to inspect against Sears; Count III alleges a breach of warranty claim; and Count IV asserts a negligent manufacturing cause of action.[2]

Defendants moved for summary judgment, arguing that the opinions of Plaintiffs' expert witnesses, who claim the freezer was the source of the fire, are inadmissible and that without

---

[1] The Main Street America Group ("Main Street") insured Ms. Castle-Horne's home and car, and the Donegal Insurance Group ("Donegal") insured Mr. Horne's truck. Both insurers seek the amount paid under their insurance policies. Ms. Castle-Horne and Mr. Horne are also plaintiffs, but seek only to recover their deductibles. (Collectively "Plaintiffs").

[2] It is unclear to the Court how Counts I and IV are distinct. The Complaint states in Count I, "As a direct and proximate result of Defendant, Electrolux Inc.'s negligent manufacture and defects of the Sears Kenmore upright freezer and/or its component part(s), damage occurred to the property referenced herein in a fire originating in the Sears Kenmore upright freezer." The Complaint states in Count IV, "Upon information and belief, said Sears Kenmore upright freezer and/or its component part(s) were negligently manufactured and/or sold by Defendant Sears, Roebuck & Company and/or Defendant Elextrolux, Inc." Both counts appear to allege negligent manufacturing and sale against both Defendants.

1

their testimony, Plaintiffs have failed to put forth sufficient evidence to withstand summary judgment. They have also moved for summary judgment on Plaintiffs' breach of warranty claims based on the statute of limitations. Plaintiffs have responded in support of their expert witnesses, using supplemental affidavits, and have moved to exclude the testimony of one of Defendants' expert witnesses. Defendants responded with further support for their motion for summary judgment, a motion to strike "new" expert witness opinions contained in Plaintiffs' Response, and an argument in favor of their own expert witness. In sum, the pending motions include: (1) Defendants' motion to exclude expert witness testimony and motion for summary judgment; (2) Defendants' motion for summary judgment on Count III; (3) Plaintiffs' motion to exclude expert witness testimony; and (4) Defendants' motion to strike. For the reasons stated below, the motion to strike will be granted, the expert witness testimony of both parties will be allowed, and summary judgment will be granted in part and denied in part.

I.  STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* the Supreme Court of the United States explained that in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In analyzing whether a genuine issue of material fact exists, the evidence and reasonable inferences from that evidence must be viewed in the light most favorable to the nonmoving party. *Id.* at 255.

## II.  MOTION TO STRIKE

It is necessary to first address Defendants' motion to strike the supplemental expert testimony provided in Plaintiffs' Response because determination of which evidence is properly before the Court may alter subsequent analysis.  Federal Rule of Civil Procedure 26(a)(2) imposes specific requirements for the disclosure of expert testimony.  Under Rule 26(a)(2)(A), the disclosure of an expert witness "must be accompanied by a written report—prepared and signed by the witness" that includes, among other things, "a *complete* statement of all opinions the witness will express and the basis and reasons for them."  FED. R. CIV. P. 26(a)(2)(A) (emphasis added).  If a party fails to meet the disclosure requirements or amend its disclosures in a timely manner, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).  The district court has "broad discretion" to determine whether a Rule 26(a) violation is substantially justified or harmless, using a five-factor test outlined by the Fourth Circuit.  *S. States Rack and Fixture, Inc. v. Keller Rigging & Constr. Co.*, 318 F.3d 592, 597 (4th Cir. 2003).  The court should be guided by the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.*  The burden of proving a substantial justification or harmlessness rests with the party that failed to disclose. *Id.* at 596 (citations omitted).

Under the Court's Scheduling Order, Plaintiffs' Rule 26(a)(2) expert disclosures were due by February 13, 2009.  Plaintiffs timely provided disclosures on February 12, 2009.  In responding to Defendants' Motion to Dismiss, however, Plaintiffs provided additional

explanation and attached supplemental affidavits that Defendants describe as "new opinions" and challenge as untimely. (Defendants' Reply ("Defs.' Reply") at 6). Briefly described, these new opinions are: (1) the fire began when a failure of the freezer's condenser motor or attached wiring ignited "dust or nearby combustibles"; (2) the electrical conductors within the freezer's compressor compartment had accumulated "layers" of dust, raising their operating temperature and degrading their insulation; (3) the freezer contained a design defect because it did not "have a temperature sensor or device to gently fail"; and (4) the insulation on the electrical conductors within the freezer's compressor compartment degraded over time due to "wear, tear and degradation" and being subjected to "extreme temperature variations." (*Id.* at 6-7.)

As explained above, the burden of proving that the failure to disclose new evidence was justified or harmless rests with its proponents. This burden clearly was not met here, given that Plaintiffs failed to even respond to Plaintiffs' motion to strike. *Cf. Perkins v. United States*, 626 F. Supp. 2d 587, 591-92 (E.D. Va. 2009) (excluding expert testimony where proponent failed to address the third and fourth factors of the five-factor test and did not offer a justifiable explanation for the nondisclosure). To the extent that Defendants' supplemental affidavits offer new theories, as opposed to simply adding detail to their previously offered reports, they are inadmissible. Therefore, the new theories will not be included in evaluating the admissibility of witnesses or analyzing the motion for summary judgment. They are also inadmissible at trial.

### III. EXPERT WITNESS ANALYSIS

The admission of expert witness testimony is controlled by the Federal Rules of Evidence. Under Rule 702,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as

>an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The burden of establishing the admissibility of expert witness testimony rests with its proponent. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10 (1993). This burden is distinct from a burden of proof; the proponent has a "burden of *production*—that is, the burden of coming forward with evidence from which the trial court could determine" that the evidence is admissible under *Daubert*. *Maryland Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998) (emphasis in original). The court performs a gate-keeping function and must assess the proffered evidence using a two-pronged analysis. *See Newman v. Motorola, Inc.*, 218 F. Supp. 2d 769, 772 (D. Md. 2002). First, the court must question whether the evidence is valid and reliable. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). Second, the court must determine whether the evidence will help the trier of fact. *Id.* In other words, the court must ensure that the testimony is both "relevant" and "reliable." *Daubert*, 509 U.S. at 589.

The Court in *Daubert* identified several factors that may bear upon the determination of the reliability of scientific evidence, including "(1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication"; (3) the error rate; and "(4) whether the theory or technique enjoys general acceptance within a relevant scientific community." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592-594); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (extending *Daubert* to "the testimony of engineers and other experts who are not scientists"). These factors are "neither definitive nor exhaustive, and some may be more pertinent than others depending on the nature of the issue, the expert's particular expertise, and

the subject of his testimony." *Newman*, 218 F. Supp. 2d at 773 (citing *Cooper*, 259 F.3d at 199-200) (internal quotation and other citations omitted).

The parties and their experts agree that NFPA 921, Guide for Fire and Explosion Investigations, is an authoritative text. (*See* Plaintiffs' Response ("Pls.' Resp.") at 5; Defs.' Reply at 4.) Each potential expert witness will be evaluated in turn, beginning with Plaintiffs' three proffered witnesses. As explained below, the testimony of both parties' expert witnesses is admissible.

   A. Deputy State Fire Marshal Edward Ernst

Deputy State Fire Marshal Edward Ernst joined the State Fire Marshal's Office in 2001, at which point he began on-the-job training in fire investigations. At the time of the incident at issue, he had some experience investigating fires, but he had not obtained a Certified Fire Investigator ("CFI") or Certified Fire and Explosion Investigator ("CFEI") certificate. (Deposition of Edward L. Ernst ("Ernst Dep.") at 9-12.) By the time of his deposition, he had investigated over 370 fires and testified as an expert in several courts. (Ernst Dep., Exh. 1 Curriculum Vitae.)

Ernst responded to the fire at the Castle-Horne residence as a firefighter and began to investigate after the fire was extinguished. His investigation included interviewing Ms. Castle-Horne and conducting a visual inspection of the premises. (Ernst Dep. at 27-30.) During his investigation, he observed a V-pattern on the wall behind the freezer, and by comparing it to other parts of the wall determined that the bottom of the V-burn was the lowest area of burn. This is consistent, in Ernst's opinion, with a fire that started behind the freezer and then spread throughout the garage. He therefore concluded that the freezer was the most probable source of

the fire, and ruled out the vehicles as the source. (Ernst Dep., Exh. 2 Incident Initiation Report at 2.)

Defendants challenge the reliability of Ernst's opinion that the vehicles housed in the garage were not the source of the fire.[3]  Specifically, Defendants argue that Ernst's testimony is logically flawed because the damage to the garage would be the same regardless of whether the cars began the fire or caught on fire during the ensuing blaze. (Defs.' Motion to Exclude at 29.) This argument seems to ignore significant portions of Ernst's deposition testimony.  His opinion that the vehicles were not the source of the fire was based largely upon his examination of the vehicles themselves, not just the damage the burning vehicles caused to the garage structure. Specifically, he inspected the body, paint, interior, and engine of each car. (Ernst Dep. at 30-34.) This testimony is both relevant and reliable under *Daubert* and is therefore admissible.

B. James Steven Forren, CFEI

The next investigator to arrive at the scene was James Steven Forren, CFEI.  At the time of the investigation, Forren had two years of experience investigating fires as a private expert consultant in connection with civil litigation for Unified Investigations & Sciences, Inc.  Prior to working for Unified Investigations, Forren worked for over ten years in positions including firefighter, paramedic, deputy fire marshal, and fire investigator.  (Deposition of James Steven Forren ("Forren Dep."), Exh. 1 Resume.)

---

[3] Defendants initially argued that Ernst is unqualified to render opinions regarding the freezer's compressor and that the other opinions he intends to offer are inadmissible under *Daubert* and Rule 702.  They later determined that some of these arguments were mooted by Plaintiffs' clarification of the purpose of Ernst's testimony. (*See* Defs.' Reply at 5.)  According to Plaintiffs, Ernst "is not being offered as an expert in the mechanics of the failure of the Freezer." ( Pls.' Resp. at 5.)  (emphasis in original).)  Rather, he is being offered as "an expert on the issue of the cause and origin of the fire only." (*Id.*)  Based on this clarification, it appears that Defendants are only challenging Ernst's ability to testify that the vehicles were not potential causes of the fire.

Forren's investigation included an interview with Ms. Castle-Horne and visual inspection of the two vehicles, the fire scene, and the remains of the freezer. (Forren Dep. at 5, 25, 78-82.) After evaluating the burn patterns in the garage, Forren concluded that the fire originated in the area of the freezer and recommended that an electrical engineer be retained to examine it. (*Id.* at 39.) He also analyzed the burn patterns on the vehicles and on the corresponding parts of the garage structure to rule out the vehicles as the source of the fire. (*Id.* at 103-114.)

Defendants challenge Forren's testimony for reasons similar to their challenge of Ernst's testimony. Specifically, they argue that there is no reason to believe that the fire damage observed by Forren would have been different if the fire had begun in one of the cars. Therefore, they continue, Forren's conclusion to the contrary is illogical and inadmissible. (Defs.' Mot. at 27.) Forren is an experienced expert who testified at length about how his observations led him to the conclusion that the vehicles were not the source of the fire. That Defendants doubt his conclusion does not render it illogical or otherwise inadmissible. Defendants point to no violation of NFPA procedures or other reasons for disqualification. The testimony is therefore admissible.

C.  Robert A. Simpson

Robert Simpson is a self-employed electrical engineering consultant who was hired solely to examine the remains of the freezer and the outlet into which it was plugged. He has been in forensic engineering since 1990 and began his own consulting firm in 1997. (Deposition of Robert A. Simpson ("Simpson Dep."), Exh. 1 Resume; Simpson Dep. at 8.)

Simpson viewed the freezer and garage premises on December 4, and examined the freezer wiring and associated wiring from the garage outlet at his own facility on December 7.

8

Based on his observations at the scene and his examination of the freezer wiring, he concluded "to a reasonable degree of engineering certainty" that the freezer, specifically the compressor compartment wiring, was the cause of the fire.  (Simpson Dep., Exh. 3 Report Dated Feb. 12, 2008.)

Defendants make several arguments against admitting Simpson's testimony.  First, they argue that his opinions lack the necessary factual and scientific basis to be admissible.  Second, they emphasize that he failed to support his opinions with relevant testing.  Third, they claim Simpson failed to address the testing conducted by Defendants' experts.  And finally, they analogize Simpson's testimony to expert testimony recently excluded by the Fourth Circuit. (Defs.' Mot. at 18-23.)  None of these arguments is persuasive.

Simpson's testimony does not lack the necessary methodological basis for admission.  Although Defendants have pointed to several perceived flaws in Simpson's ignition theory and unanswered questions in his deposition testimony,[4] these shortcomings are insufficient to warrant exclusion under *Daubert*.  As the Fourth Circuit has explained, the district court's inquiry is "a flexible one, which focuses solely on principles and methodology, not on the conclusions that they generate." *Maryland Cas. Co.*, 137 F.3d at 783 (quoting *Daubert*, 509 U.S. at 594-95) (internal quotations omitted).  This court has "broad discretion in admitting scientific testimony that could later be tested by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id*. (quoting *Daubert*, 509 U.S. at 596) (internal quotations omitted).  The proponents of expert testimony need not demonstrate that their experts'

---

[4] Defendants emphasize that Simpson was unable to answer questions regarding how long the high-resistance heating event took place and how hot the conductor would need to be to ignite the insulation. (*Id.* at 131-33, 146.) He was also unable to conclusively determine what caused the high-resistance heating event. (*Id.* at 139-43.) Simpson limited his opinion to the fact that the fire started in the freezer's compressor compartment.  He did not testify that there was a design or manufacturing defect and had no opinion about whether the freezer violated any applicable standards. (*Id.* at 103-06, 131.)

theories are correct, but rather that the opinions are reliable by a preponderance of the evidence. *Id.* (citation omitted). Here, Defendants' critiques go to the veracity of Simpson's theory, not its reliability. Their concerns can adequately be addressed during routine cross-examination and by testimony of their own witnesses. The fact that Simpson did not conduct testing does not change this analysis. Case law is clear that testing is not a requirement for admissibility under *Daubert* and the Federal Rules of Evidence. *Id.* at 784. And, contrary to Defendants' implications, Simpson did not need to address the testing carried out by their own expert. While such testimony might be useful, it is not significant for the purposes of determining admissibility. Defendants' emphasis on the lack of testing is therefore misplaced.

Furthermore, Defendants' reliance upon *Boss v. Nissan N. Am. Inc.*, 228 Fed. App'x 331 (4th Cir. 2007) (unpublished) is misguided. In *Boss* the court faced allegations that a car's power steering system had been negligently designed, leading to a tragic accident. As summarized by the Defendants, it is true that the Fourth Circuit agreed with the district court that the expert testimony was too speculative to be admissible because the experts could only opine that their theory of events was possible. (Defs.' Mot. at 23.) *Boss* is distinguishable from this case, however, in numerous respects that were significant to the court's decision. First, *Boss* involved no physical evidence of the conditions that were alleged to have caused the malfunction. 228 Fed. App'x at 337-38. Here, although the parties dispute the interpretation of the burn patterns and other physical evidence, they cannot claim that there is no physical evidence to examine. Second, the court emphasized a lack of testing in *Boss* only because there was no support for the proposition that the particular set of conditions alleged would actually cause the power steering problem that was possibly encountered. *Id.* at 338 ("Assuming a jam did occur, Boss's experts do not rely on any field tests to support their testimony that a particle jam would cause the

10

steering wheel to lock up or self-steer. . . . Thus, even if a particle did block the spool valve, the experts have no basis for concluding that it affected Harmon's control over the vehicle.") Here, there is at least some support for the proposition that the facts alleged would cause a fire. Perhaps most problematically, the experts in *Boss* "simply assume[d] that human error did not cause the crash." *Id.* In other words, they did not rule out other equally plausible theories to explain the accident. Here, in sharp contrast, experts have ruled out the vehicles as the source of the fire, and no other plausible sources of fire have been offered.

A more analogous Fourth Circuit analysis can be found in *Maryland Cas. Co.* The expert in that case was an electrical engineer who specialized in analyzing thermostats and other switch failures, and his expert opinion was that a malfunction in a thermostat caused a fire in a drier. 137 F.3d at 782. His testimony showed that, rather than conducting tests, "his opinion was based on his examination of the conditions inside the disputed switch and the application of principles of electrical engineering to those conditions." *Id.* at 785. The Fourth Circuit affirmed the trial court's decision to allow the testimony. *Id.*

D.  Lawrence P. Sacco, P.E.

Plaintiffs make a *Daubert* challenge to Defendants' electrical engineering expert, Lawrence P. Sacco. Specifically, they argue that Sacco's test burn of sample freezer wiring is inadmissible because it did not approximate the possible degradation of the actual wiring found in the subject freezer. Plaintiffs argue that testimony regarding this test is irrelevant and would confuse a trier of fact.

Plaintiffs' motion is denied. Plaintiffs have offered no evidence that the wiring was degraded or that degradation of the wire would alter it in a relevant manner, and Sacco explicitly

11

testified that the degradation of the wiring was not a concern. (Deposition of Lawrence P. Sacco ("Sacco Dep.") at 114-15). Plaintiffs remain free to cross-examine Sacco on this issue, but the testing is clearly admissible under *Daubert*.

## IV. MOTION FOR SUMMARY JUDGMENT

Defendants argue that even if all of Plaintiffs' expert witness opinions are admissible, they are nevertheless entitled to summary judgment. As explained below, the motion for summary judgment will be granted in part and denied in part. First, summary judgment will be granted as to Counts II and III for reasons specific to those Counts. The motion for summary judgment will be denied, however as to Counts I and IV, as explained subsequently.

### A. Count II

In Count II, Plaintiffs allege a negligent failure to warn and negligent failure to inspect. Under Maryland law, a failure to warn claim requires the following elements: "(1) that the defendant owed a duty to warn; (2) that the defendant breached that duty; (3) that there was a direct causal connection between the defendant's failure and the alleged injuries; and (4) that the plaintiff was harmed." *Higgens v. Diversey Corp*, 998 F. Supp. 598, 604-05 (D. Md. 1997). The duty to warn arises from knowledge of the risk of danger. *Id.* Here, Plaintiffs have not supplied any evidence to suggest that Defendants knew or should have known the freezer had a dangerous defect. In fact, Plaintiffs did not even include this element as an allegation in their Complaint.[5] Defendants are therefore entitled to summary judgment on Count II.

### B. Count III

---

[5] Plaintiffs also fail in their Response to counter Defendants' argument that this element has not been met.

In Count III, Plaintiffs allege a breach of warranty claim. Under Maryland law, an action for breach of a contract for sale must be commenced within four years of when the action accrued. MD. CODE ANN., COMM. LAW § 2-275(1). The cause of action accrues when the breach occurs, regardless of when the party learns of the breach. However, "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." *Id.* at § 2-275(2). Plaintiffs argue that this language means they had four years to bring their claim after the fire occurred. Defendants point out, however, that the warranty at issue was to repair and replace, not a warranty for future performance.[6] The statute of limitations was therefore four years from the date of purchase, and the action is not timely brought for this Count. Summary judgment will be granted in favor of Defendants.

C. Counts I and IV

"Under Maryland law, a plaintiff in a products liability action must establish three evidentiary 'basics' regardless of the theory of recovery: '(1) the existence of a defect; (2) the attribution of the defect to the seller; and (3) a causal relation between the defect and the injury." *Assurance Co. of Am. v. York Int'l, Inc.*, 305 Fed. App'x 916, 921 (4th Cir. 2009) (quoting *Jensen v. Am. Motors Corp.*, 437 A.2d 242, 247 (Md. 1981)) (other citation omitted). Three types of evidence may be used to show a product defect: "(1) direct proof based on the nature of the accident in the context of the particular product involved; (2) circumstantial proof based on an inference of a defect from a weighing of several factors; and (3) direct affirmative proof

---

[6] The warranty states: "For five years from the date of purchase, when the freezer is operated and maintained according to instructions in this owner's manual, Sears will repair the sealed refrigeration system (consisting of refrigerant, connecting tubing, and compressor), free of charge, if defective in material or workmanship. The above warranty coverage applies only to Freezer which are used for storage of food for private household purposes." (Defs.' Reply at 24-25.)

through opinion testimony by an expert witness." *Id.* (quoting *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 407-08 (D. Md. 2001)). "Proof of a defect must arise above surmise, conjecture, or speculation; and one's right to recovery may not rest on any presumption from the happening of an accident." *Id.* (quoting *Jensen*, 437 A.2d at 245) (other citation omitted).

When circumstantial evidence is used to prove a product defect, Maryland applies the "indeterminate defect" theory. This approach allows an inference of a defect to "be drawn from the happening of an accident, where circumstantial evidence tends to eliminate other causes, such as product misuse or alteration." *Id.* (quoting *Harrison v. Bill Cairns Pontiac, Inc.*, 549 A.2d 385, 390 (Md. 1988)). Five factors must be considered when evaluating whether the "indeterminate defect" theory applies: "(1) expert testimony as to possible causes; (2) the occurrence of the accident a short time after the sale; (3) same accidents in similar products; (4) the elimination of other causes of the accident; (5) the type of accident that does not happen without a defect." *Id.* (quoting *Harrison*, 549 A.2d at 390) (other citations omitted). There is no precise formula for weighing these factors. *Id.* (citations omitted).

Here, Plaintiffs offer two alternate theories of liability. First, they argue that they have established a defect through Simpson's Affidavit. As explained above, however, the submission of this Affidavit long after expert witness disclosures were due violated Rule 26(a)(2) and is therefore not admissible. As Plaintiff impliedly realizes, there is an insufficient showing of direct proof absent this supplemental Affidavit. (Pls.' Resp. at 23-24.)[7]

---

[7] The court does not mean to imply that the showing of proof would necessarily be adequate if Simpson's Affidavit had been admitted.

Plaintiffs title their second theory of liability "Res Ipse [sic] Loquitor [sic]." Although *res ipsa loquitur* clearly does not apply here,[8] Plaintiffs' theory generously read may suggest an intention to rely on the "indeterminate defect" theory. The Court will therefore apply the five factors outlined above.

Courts have found the first factor, expert witness testimony, to be satisfied where "plaintiffs put forth expert testimony of possible *causes* of the fire, not merely possible *origins* of the fire." *Assurance Co.*, 305 Fed. App'x at 922-23 (emphasis in original) (citations omitted). Although Simpson's testimony may have flaws, it is sufficient to satisfy the first element. *See Watson v. Sunbeam Corp.*, 816 F. Supp. 384, 388 (D. Md. 1993) (finding expert testimony sufficient where it appeared that the expert "was inferring from the occurrence of the fact [of the fire] that the defect which he identified was its cause").

The second factor, the occurrence of the accident a short time after the sale, very clearly cuts against reliance on the indeterminate defect theory here. "Although there are no 'hard-and-fast' rules regarding what length of time is sufficient to satisfy this factor," in most cases where the element has been satisfied, "the accidents occurred within two to three months of the time that the products left the control of the manufacturer." *Assurance Co.*, 350 Fed. App'x at 923

---

[8] Plaintiffs' case law regarding its use of the doctrine of *res ipsa loquitur* is not helpful. In fact, to the extent that it is relevant, it cuts against Plaintiffs' ability to make a *res ipsa* argument. In the first of the cited cases, *Holzhauer v. Saks & Co.*, 697 A.2d 89 (Md. 1997), the court outlined three elements that must be proven for the doctrine to apply: "(1) a casualty of a kind that does not ordinarily occur absent negligence, (2) that was caused by an instrumentality exclusively in the defendant's control, and (3) that was not caused by an act or omission of the plaintiff." *Id.* at 92-93 (citing *Dover Elevator Co. v. Swann*, 638 A.2d 762, 765 (Md. 1994)). The court then applied the three elements to allegations involving an elevator that abruptly stopped, causing bodily injury. The court's reasoning, which largely applies to the facts in this case, determined that *res ipsa* did not apply. The court observed, for example, that the Maryland Court of Appeals "has often held *res ipsa* to be inapplicable when the opportunity for third-party interference prevented a finding that the defendant maintained exclusive control of the injury-causing instrumentality." *Id.* at 93. Here, the Defendants clearly did not maintain exclusive control over the freezer. Perhaps more significantly, the court emphasized, "[A] case involving complex issues of fact, for which expert testimony is required, is not a proper case for *res ipsa loquitur*." *Id.* at 95. Because Plaintiffs offer absolutely no interpretation of this case, it is unclear in what way they believed it aided their argument. Even more strangely, the second case Plaintiffs cited, *Virgil v. "Kash N' Karry" Serv. Corp.*, 484 A.2d 652 (Md. Ct. Spec. App. 1984), does not even mention *res ipsa*.

(allowing that "it is conceivable" that an eight month window might satisfy this element); *see also Harrison*, 549 A.2d at 385 (finding that identification of a defect five years after sale "does not permit an inference that a defect existed" at the time the product was manufactured). The accident at issue occurred nearly ten years after purchase of the freezer. This is far too long.

The third factor, evidence of the same types of accidents in similar products, has not been supported by the Plaintiffs. *See Assurance Co.*, 305 Fed. App'x at 923 (holding this factor against plaintiffs where "they have no evidence of prior similar accidents" involving the particular furnace model at issue).

The Plaintiffs have, however, satisfied the fourth element, which requires the elimination of other causes of the fire; their expert witnesses have adequately ruled out the vehicles as sources of the fire, and Defendants have suggested no other possible sources. *See Stanley Martin Cos., Inc. v. Universal Prods. Shoffner LLC*, 396 F. Supp. 2d 606 (D. Md. 2005) ("Evidence that tends to eliminate the most probable alternative causes is likely sufficient.")

The final factor is whether this is a type of accident that occurs without a defect. Put more clearly, it queries whether "even if other causes are not eliminated, the accident is of a type that does not ordinarily happen unless a defect exists." *Watson*, 816 F. Supp. at 389. For example, imploding bottles satisfy this factor, but fires occurring in beds where electric blankets are used do not because a fire may occur in such circumstances without any blanket defects. *Id.* A freezer catching on fire seems more analogous to imploding bottles. Certainly reading the evidence most favorably to Plaintiffs, this final element weighs in their favor.

In sum, Plaintiffs have satisfied three of the five factors. This leads to the conclusion that a reasonable jury could return a verdict in favor of plaintiffs. Therefore, summary judgment will not be granted on this basis alone. Thus, Counts I and IV are not subject to summary judgment.

## CONCLUSION

For the above-mentioned reasons, summary judgment will be granted in favor of Defendants as to Counts II and III. Summary judgment will not be granted on Counts I and IV.

DATE:  3/11/2010                    ___/s/_____
                                    J. Frederick Motz
                                    United States District Judge